UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MAUREEN MANCINA | : | |
| 6021 West 102nd Street | : | |
| Overland Park, Kansas  66207 | : | Case No. _____ |
| | : | Judge _____ |
| CARRIE BEZEK | : | |
| 14031 N. Old Forest Trail | : | |
| Oro Valley, Arizona  85755 | : | |
| | : | |
| JULIE RUDOLF and | : | |
| CHARLES RUDOLF | : | |
| 212 Weatherby Street | : | |
| Dalton, Pennsylvania  18414 | : | |
| | : | |
| and | : | |
| | : | |
| MARK McDERMOTT | : | |
| 9113 Rising Road | : | |
| Indianapolis, Indiana  46216, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| TERRY McDERMOTT | : | |
| and SARAH McDERMOTT, | : | |
| Individually and as Parents and | : | |
| Natural Guardians of A.B. and B.C. | : | |
| 6255 Renie Road | : | |
| Bellville, Ohio  44813, | : | |
| | : | |
| Defendants. | : | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs, Maureen Mancina, Carrie Bezek, Julie Rudolf, Charles Rudolf and Mark McDermott (collectively, "Plaintiffs"), for their Complaint against defendants, Terry McDermott

and Sarah McDermott, individually and as parents and natural guardians of A.B. and B.C. (collectively, "Defendants"), state as follows.

## PARTIES

1. Plaintiff, Maureen Mancina, is an individual who resides in Overland Park, Kansas.

2. Plaintiff, Carrie Bezek, is an individual who resides in Oro Valley, Arizona.

3. Plaintiff, Julie Rudolf, is an individual who resides in Dalton, Pennsylvania.

4. Plaintiff, Charles Rudolf, is an individual who resides in Dalton, Pennsylvania.

5. Plaintiff, Mark McDermott, is an individual who resides in Indianapolis, Indiana.

6. Defendant, Terry McDermott, is an individual who resides in Bellville, Ohio.

7. Defendant, Sarah McDermott, is an individual who resides in Bellville, Ohio.

## JURISDICTION AND VENUE

8. This matter involves a request for a declaration of Plaintiffs' legal obligations to Defendants pursuant to 28 U.S.C. § 2201.

9. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties are completely diverse, and pursuant to 28 U.S.C. § 2201 because Plaintiffs seek a declaration of their rights and legal obligations in a justiciable controversy.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this request for declaratory judgment occurred in this district.

## FACTUAL ALLEGATIONS

11. Plaintiffs, Maureen McDermott Mancina ("Maureen"), Carrie McDermott Bezek ("Carrie"), Julie McDermott Rudolf ("Julie") and Mark McDermott ("Mark") are sisters and

brother, the second, fourth, sixth and tenth children of the ten born to William and Peggy McDermott.

12. Plaintiff, Charles Rudolf is Julie's husband.

13. The other children of William and Peggy McDermott are Patrick McDermott, deceased ("Pat"), Daniel McDermott, Brian McDermott, David McDermott, Eileen McDermott Kamp ("Eileen") and Kathleen McDermott Gilbert ("KK") (collectively, the "McDermott Family").

14. The McDermott Family grew and the children grew up in Chagrin Falls, a small suburb of Cleveland, Ohio.

15. Despite growing up in a gregarious environment, Pat, the oldest son, was socially awkward. As he began to experience puberty and sexual awareness, his socially awkward personality mutated into unhealthy impulses.

16. In his late teenage years, Pat began sexually molesting his younger siblings – Julie, Eileen, KK and Mark. The molestations were episodic (*i.e.*, happened a couple of times), occurred when the victims were five to six years old and were known only to Pat and the victims, none of whom talked about or shared what happened with their parents or each other.

17. When Pat left home for college, the molestation stopped and did not reoccur when Pat returned from college. He graduated with a degree from Kent State, met and married Ruth Ann Moroney, fathered three children, had a successful career, was active in his community and was loved and embraced by his parents, brothers and sisters, their spouses and children, including Maureen, Carrie, Julie and Mark who have 13 children between them, six boys and seven girls.

18. Defendant, Terry McDermott, is one of Pat's three sons, none of whom were ever molested by their father.

19. From the mid-1960s to the early 1990s, none of the molested siblings disclosed their experiences with Pat. None of them knew that anyone else had been molested.

20. Then, in the early 1990s while at the Kamps' for Thanksgiving, Julie asked Eileen and KK if they, as children, had ever been touched inappropriately by Pat. Eileen and KK both acknowledged vague memories of Pat molesting them. No details were shared; the discussion was more cathartic. Julie, Eileen and KK were no longer alone with their suspicions. But Pat was their brother; they had no reason to think his behavior was ongoing or that anyone, including their own daughters, were in jeopardy.

21. Shortly after the Thanksgiving discussion, Eileen saw a TV talk show (Oprah) on which siblings confronted each other about childhood molestation. She decided to confront Pat. She notified Julie and KK that she was planning what she thought would be an uncomfortable confrontation with Pat. Armed with their endorsement, Eileen arranged a date and time to confront Pat when he was scheduled to be in Cincinnati. Pat would occasionally have dinner and spend the night at the Kamps on his way home from a sales trip.

22. Eileen made sure she would be alone with Pat (her children were at school and pre-school). When he arrived, she directed him to the family room and told him that she remembered him molesting her and that she was aware that he had done the same thing to Julie and KK.

23. Pat was embarrassed, but surprisingly repentant. He admitted what he had done, apologized profusely and explained that he was lonely and immature as a teenager and the

4

incidents with Julie, KK and Eileen were solely the by-product of his confused adolescence. He was adamant that it had never happened since and that it would never happen in the future. He promised Eileen he would share his contrition with KK and Julie.

24. And he did.

25. Upset, but trusting his sincerity and candor in admitting what he had done, Eileen, KK and Julie accepted Pat's apology, believed his behavior was in fact adolescent angst and were convinced that what happened to them decades earlier were isolated incidents confined to his adolescence.

26. From the early 1990s until April 2019, Pat appeared to be a model citizen, father, grandfather, brother and friend.

27. Pat was welcomed at family reunions, family outings and family-centric holidays (principally Thanksgiving), all of which included young children and grandchildren.

28. That all changed on April 10, 2019.

29. Unbeknownst to any of the Plaintiffs, Pat had been molesting his two granddaughters, apparently for some time. The molestation was discovered when a family therapist reported one of the minor children had revealed that Papa Pat had "tickled her butt."

30. An investigation ensued. On May 6, 2019, Pat was arrested and, later that day, confessed to molesting his two granddaughters.

31. The father of the abused children, Terry McDermott, called Eileen to break the news to the McDermott Family.

32. Eileen was horrified. While trembling from the news that her meek, mild-mannered oldest brother had confessed to molesting his granddaughters, Eileen shared with Terry her encounter with Pat over forty years earlier.

33. Hearing that Eileen, and possibly other McDermott siblings, had been molested by Pat, Terry turned empathy to antipathy – "You should have told us; you should have warned us!"

34. As news of Pat's heinous crime spread throughout the McDermott siblings, ambiguous recollection sharpened into focus. Mark, who had been told by a therapist that he must have been abused as a child, began to appreciate how he was abused. Pat had molested him.

35. Before Pat's confession, Mark had no memory of Pat molesting him – just a vague feeling that something inappropriate had happened to him as a child and that his therapist believed he was sexually abused.

36. As the police investigation expanded to include Pat's criminal sexual abuse of his siblings forty years earlier, Pat not only confessed to the crimes, he provided detail that excavated the repressed memories of Mark and Carrie.

37. Carrie recalled dreamlike encounters with Pat that now became real. Pat had molested her.

38. Maureen, the oldest daughter who was only one year younger than Pat, was never abused. Her sole involvement was her general awareness of Pat's abuse of Julie, Eileen and KK and her "failure to warn" Terry and Sarah.

39. Despite his father's confession, indictment, conviction and imprisonment, Terry and his wife, Sarah, blamed the McDermotts for Papa Pat's crime. They vowed to get even.

40. After Pat's conviction and ultimate death from COVID-19, Terry and Sarah rebuffed family entreaties to help and support them. Terry responded with vitriol and contempt.

41. Having heard nothing from Terry and Sarah since 2019, Plaintiffs were unpleasantly surprised by large Federal Express packages left on their doorsteps just days before Thanksgiving 2020.

42. In each package was a letter from Daniel R. Karon, Terry and Sarah's attorney, transmitting two complaints, each of which was over 190 pages, alleging, on behalf of the two abused granddaughters, that six McDermott family members and two of their husbands negligently failed to warn Terry and Sarah, as parents of the victims, that Pat had molested Julie, Eileen, KK and Mark forty years earlier. According to the complaints, the six McDermotts and two husbands are to blame for Pat's horrendous crime.

43. The cover letter from Karon indicated the complaints would be filed shortly.

44. The 191-page complaint includes over 50 pages of family photographs, many of which depict children, uninvolved family members and innocent third-parties.

45. The complaints describe every detail of the sexual molestation, the criminal investigation, and the previously-described photographs in an effort to sensationalize, embarrass and humiliate a good-hearted, well-intentioned family against whom Terry and Sarah, individually and as guardians of their children, have no claim. There is no duty to warn. There is no fiduciary relationship. There is no case; only retribution.

7

## REQUEST FOR
## DECLARATORY RELIEF

46. Plaintiffs hereby incorporate all of the allegations contained in paragraphs 1 to 45 as if fully rewritten herein.

47. In order to establish actionable negligence, a plaintiff must establish that the defendant owed the plaintiff a duty, that a breach of that duty proximately caused the injury, and that plaintiff was injured.

48. While the scope and extent of the duty is ultimately a question of fact, the existence of such a duty is a question of law. *Menifee v. Ohio Welding Prod., Inc.*, 15 Ohio St. 3d 75, 77, 472 N.E.2d 707, 710 (1984); *Mussivand v. David*, 45 Ohio St. 3d 314, 318, 544 N.E.2d 265, 269-70 (1989).

49. Plaintiffs had no fiduciary relationship with Defendants or their children, A.B. and/or B.C.

50. Plaintiffs had no legal duty to control Patrick McDermott's conduct, to warn Defendants and/or to protect A.B. and/or B.C.

51. Plaintiffs, therefore, seek a declaration by the Court that, even if all of the allegations in Defendants' complaint are assumed to be true, Plaintiffs had no duty, as a matter of law, to Defendants, A.B. and/or B.C.

WHEREFORE, Plaintiffs request a declaratory judgment as delineated above.

| | |
|---|---|
| February 5, 2021 | Respectfully submitted, |
| | Per Email Authorization<br>of February 5, 2021 |
| | *s/ James E. Arnold* |
| | _____ |
| | James E. Arnold (OH 0037712)<br>ARNOLD & CLIFFORD, LLP<br>115 West Main Street, Suite 400<br>Columbus, Ohio  43215<br>jarnold@arnlaw.com<br>(614) 460-1600 |
| | *s/ Jean Geoppinger McCoy* |
| | _____ |
| | Gregory A. Harrison (OH 0029814)<br>Jean Geoppinger McCoy (OH 0046881)<br>Sarah E. Abbott (OH 0086099)<br>DINSMORE & SHOHL LLP<br>255 East Fifth Street, Suite 1900<br>Cincinnati, Ohio  45202<br>greg.harrison@dinsmore.com<br>jean.mccoy@dinsmore.com<br>sarah.abbott@dinsmore.com<br>(513) 977-8200 |
| | *Attorneys for Plaintiffs* |