UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MAUREEN MANCINA, et al.,

    Plaintiffs,

v.

TERRY McDERMOTT, et al.,

    Defendants.

:

:

Case No. 2:21-cv-549
Judge Sarah D. Morrison
Magistrate Judge Elizabeth P. Deavers

## OPINION & ORDER

Plaintiffs Maureen Mancina, Carrie Bezek, Julie Rudolf, Charles Rudolph, and Mark McDermott filed an Amended Complaint on March 18, 2021. (ECF No. 4, Am. Compl.) Defendants Sarah McDermott and Terry McDermott have moved to dismiss the Amended Complaint for, among other things, lack of subject matter jurisdiction. (ECF No. 9). The Motion is fully briefed. (ECF Nos. 12, 13.)

**I.   BACKGROUND**

   **A.  Factual Background**

Plaintiffs' Amended Complaint details a tragedy involving several members of the McDermott family and their spouses, spanning generations. Pat McDermott, the oldest son of William and Peggy McDermott, began sexually molesting four of his younger siblings in his later teenage years. (Am. Compl., ¶¶ 11–17.) This molestation stopped after Pat left for college (*Id.*, ¶ 18.) Pat married after college and had thirteen children including Terry McDermott, a Defendant in this case. (*Id.*, ¶ 19.)

1

Thirty years went by before, in the early 1990s, Pat's abused siblings discussed the molestation with one another. (*Id.*, ¶¶ 20–21.) These siblings confronted Pat about the past abuse and found him to be repentant and sincere; they largely reconciled with him, kept the abuse to themselves, and continued to welcome him in the family. (*Id.*, ¶¶ 26–29, 34.)

In April 2019, however, the family discovered that Pat's sexual molestation of minors had resumed, as he had been molesting two of his granddaughters, the children of Terry McDermott. (*Id.*, ¶¶ 30–32.) Pat was arrested, confessed to all past sexual molestation, and died shortly thereafter. (*Id.*, ¶¶ 40–41.) When Terry learned from his aunt that she and some of her siblings had been molested by Pat at a young age but did not disclose the abuse to the rest of the family, Terry said that they "should have warned" him. (*Id.*, ¶ 34.)

### B. Procedural Background

The above events led Terry McDermott and his wife Sarah to threaten lawsuits against various family members for their alleged failure to warn them and to protect their minor children. (*Id.*, ¶¶ 42–44.) Anticipating these lawsuits, Plaintiffs filed their own declaratory judgment action with this Court, while other family members filed a declaratory judgment action in the Franklin County, Ohio Court of Common Pleas. *Gilbert et al. v. McDermott, et al.*, Franklin C.P. No. 21-cv-000779 (Feb. 5, 2021). The complaints in both actions seek a declaration that Plaintiffs had no legal duty to Terry and Sarah McDermott or their children.

Terry and Sarah McDermott then filed the threatened lawsuits against

2

Plaintiffs and other family members in the Delaware County, Ohio Court of Common Pleas. *McDermott, et al. v. Kamp, et al.*, Delaware C.P. No. 21-cvc-030089 (Mar. 3, 2021); *McDermott et al. v. Kamp, et al.*, Delaware C.P. No. 21-cvc-030090 (Mar. 3, 2021). Terry and Sarah McDermott seek "economic and noneconomic damages of at least $500,000" in those suits. (Am. Compl., ¶ 48).

## II. ANALYSIS

### A. The Court has subject matter jurisdiction.

The Court must first determine whether it has subject matter jurisdiction over an action. *Am. Home Assur. Co. v. Friends of KY Fams., Inc.*, No. 6:07-cv-10-DCR, 2007 WL 1959198, at *2 (E.D. Ky. June 29, 2007). A federal court "must have jurisdiction already under some other federal statute" before a plaintiff can successfully invoke the Declaratory Judgment Act, 28 U.S.C. § 2201. *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007). *See also Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007) (holding that § 2201 is not an independent basis for federal subject matter jurisdiction).

Plaintiffs rely upon 28 U.S.C. § 1332(a) as their sole avenue to federal jurisdiction, alleging that "the parties are completely diverse and the amount in controversy exceeds $75,000." (Am. Comp., ¶ 9 (citing 28 U.S.C. § 1332(a).) Defendants do not dispute that diversity jurisdiction is present under § 1332(a). Nevertheless, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Because Plaintiffs did not

3

specify how the amount in controversy is satisfied, some discussion of the issue is warranted.

In actions seeking declaratory relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Blaszczyk v. Darby*, 425 F. Supp. 3d 841, 852 (E.D. Mich. 2019) (quoting *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 560 (6th Cir. 2010)). In the Sixth Circuit, the value "should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Woodmen of the World/Omaha Woodmen Life Ins. Soc. v. Scarbro*, 129 F. App'x 194, 195–96 (6th Cir. 2005) (internal quotations and citations omitted). The amount in controversy stated in the complaint controls unless it "appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Darby*, 425 F. Supp. at 852 (quoting *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628 (6th Cir. 2009)); *see also Bhd. Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 692 (E.D. Ky. 2002).

"[W]hen the complaint is for a declaratory judgment, as opposed to specific monetary relief, the amount in controversy requirement can be satisfied by looking to the underlying suit." *Jeffrey Press, Inc. v. Hartford Cas. Ins. Co.*, 326 F. Supp. 2d 626, 628–29 (E.D. Pa. 2004) (citing *Manze v. State Farm Ins. Co.*, 817 F.2d 1062 (3d Cir. 1987)). *See also Scarbro*, 129 F. App'x at 196 (holding that an underlying state court action is relevant to determining the amount in controversy when that action

4

is what led the plaintiff to bring a federal declaratory judgment action in the first place).

Plaintiffs allege in their Amended Complaint that the amount in controversy exceeds $75,000. In fact, avoiding liability or further litigation in state court by way of a favorable ruling from this Court carries with it a considerable monetary benefit. Plaintiffs face several tort claims in state court where Defendants seek in excess of $500,000 in damages, making Plaintiffs' potential liability far greater than $75,000. While the Court cannot place a definitive value on Plaintiffs' claim, it certainly cannot find to a legal certainty that the amount in controversy requirement is unmet. Accordingly, the Court has subject matter jurisdiction over the action.

### B. The Court declines to exercise subject matter jurisdiction.

Though the Court has subject matter jurisdiction over Plaintiffs' claim, it still must determine whether or not it should hear the action.

The Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Act "confers discretion on courts, not rights on litigants" to have a case heard in federal court. *Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 64 (6th Cir. 1986) (citing *Green v. Mansour*, 474 U.S. 64, 72 (1985)). Thus, even when a Court has subject matter jurisdiction over a declaratory judgment action, it is "under no compulsion" to entertain the action. *Wilton*, 515 U.S. at 282 (citing *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942)).

The Sixth Circuit articulated five factors in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323 (6th Cir. 1984) to guide a district court in determining whether to exercise its discretionary jurisdiction under the Declaratory Judgment Act:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or to 'provide an arena for a race for res judicata';
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and
>
> (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 326. This list of factors is not exhaustive, rather "the Court must make a full inquiry into all relevant considerations." *Brotherhood. Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F. Supp. 2d 689, 692 (E.D. Ky. 2002).

Turning to the first factor, a judgment will not settle the entire controversy. Given the current pendency of the other lawsuits, a decision from this Court only has the potential to result in inconsistent rulings. Moreover, if the Court were to declare that Plaintiffs owed a legal duty to Defendants, there would remain an issue of damages. This factor weighs against exercising jurisdiction.

The second factor weighs heavily against exercising jurisdiction in this case. "The 'useful purpose' served by the declaratory judgment action is the clarification

of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing." *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004). Put another way, it is not a purpose of the Declaratory Judgment Act to enable prospective tort action defendants to obtain a declaration of nonliability. *Id*. (citing 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane § 2765 at 638 (3d ed. 1998)). "Where a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified." *Id*. at 787. This case is not a situation in which the declaratory plaintiffs will suffer injury unless legal relations are clarified; if Plaintiffs did owe Defendants a legal duty, the injury was to Defendants and has already occurred. Rather, Plaintiffs are seeking a declaration of nonliability while facing pending coercive actions in state court filed by the natural plaintiffs (Defendants in this action). *See McDermott, et al. v. Kamp, et al.*, Delaware C.P. No. 21-cvc-030089 (Mar. 3, 2021). Use of declaratory judgment in this case, then, is unjustified.

Turning to the third factor, Plaintiffs filed their complaint for "procedural fencing" or to "provide an arena for a race for res judicata." While Plaintiffs argue that this forum would be a "practical and efficient forum for the resolution of this dispute" (ECF No. 12, Resp., PageID 365), that argument has minimal value. "The question is not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing

7

first." *AmSouth Bank*, 386 F.3d at 789. Plaintiffs did just that: they were on notice from Defendants of the soon-to-be-filed state court lawsuits (Am. Compl., ¶¶ 42–44) and filed this federal action less than one month before Defendants filed in state court. "Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." *AmSouth Bank*, 386 F.3d at 789. This factor weighs against exercising jurisdiction.

As to the fourth factor, whether the action would cause friction between state and federal courts, the Sixth Circuit has provided three additional sub-factors to consider:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 814–15 (6th Cir. 2004) (citing *Scottsdale Ins. Co. v. Flowers*, 211 F.3d 964, 968 (6th Cir. 2000)).

Considering these sub-factors, the underlying factual issues are important to a determination of this dispute because the past conduct of the parties and their relations to one another are the facts upon which the issue of tort liability turns. Second, the state courts currently dealing with this dispute are in a better position to resolve these state-law issues. This controversy centers on state tort law, and an

8

Ohio court is in a "better position to evaluate the factual issues because [the issues rest] solely on state law with which the state courts are better acquainted." *Bituminous*, 373 F.3d at 816. Lastly, there can be no dispute that these issues and questions are intricately related to state law and public policy. Ohio is better situated to enforce the public policies that form the foundation of its tort laws. No federal common or statutory law dictates the resolution of this declaratory judgment action. Thus, exercising jurisdiction could create friction between state and federal courts. All three sub-factors weigh against exercising jurisdiction.

The fifth and final factor also weighs against exercising jurisdiction. The state courts can adjudicate the rights and duties of the parties to this suit. Ohio courts are in a superior position to resolve this dispute, given that the issues presented involve questions of purely state law. *See id.* at 816. Courts "question the need for ... declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner." *Historic Basket, LLC,* 2020 WL 1487217, at *3 (citing *Am. Home. Assurance Co.*, 791 F.2d at 63). This case is brought under Ohio law and should be resolved by an Ohio court.[1]

---

[1] Plaintiffs suggest that the Ohio courts do not have personal jurisdiction over them. (See, Resp., PageID 361, 363.) However, a review of the dockets in the pending state court cases reveals that personal jurisdiction has not been raised in those cases, and certainly, personal jurisdiction can be waived. By filing this suit Plaintiffs have shown at least some willingness to litigate in Ohio. Even if a personal jurisdiction defense is successfully raised in one or more of the state actions, the first four *Grand Trunk* factors still weigh against the exercise of jurisdiction in this case.

All factors weigh against exercising jurisdiction over this declaratory judgment action. Accordingly, the Court will abstain and dismiss the case.

## III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED**. The Clerk is **DIRECTED** to **TERMINATE** this case from the docket of the United States District Court for the Southern District of Ohio.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison<br>
**Sarah D. Morrison**<br>
**United States District Judge**